J-A32020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SLICE & HOOK ENTERPRISES, INC. AND PUTTS AND DIVOTS, L.P., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| DEBORAH MCGONIGAL, | |
| Appellee | No. 3494 EDA 2013 |

Appeal from the Order Entered November 13, 2013
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s): 11-04043

| | |
|---|---|
| PUTTS & DIVOTS, L.P. AND SLICE & HOOK ENTERPRISES, INC., D/B/A FAIRWAYS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| DEBORAH MCGONIGAL, | |
| Appellant | No. 20 EDA 2014 |

Appeal from the Order Entered November 13, 2013
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s): 2011-04043-34

BEFORE:  PANELLA, OLSON AND FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 23, 2015**

In these consolidated appeals, Appellants, Slice & Hook Enterprises,

Inc. (Slice & Hook) and Putts & Divots, L.P. (Putts & Divots), appeal from an

order entered on November 13, 2013 that granted a new trial as to all

*Retired Justice specially assigned to the Superior Court.

claims and that denied Appellants' motion for judgment notwithstanding the verdict (JNOV) as to the unjust enrichment claim filed by Appellee/Cross-Appellant, Deborah McGonigal (McGonigal). In addition, McGonigal cross-appeals from the trial court's November 13, 2013 order to the extent that order denied her request for JNOV as to Appellants' prescriptive easement claim. After careful review, we affirm.[1]

Putts & Divots is the fee simple owner of real property located in Warrington Township, Bucks County, Pennsylvania, known as the Fairways Golf Course. Slice & Hook operates the Fairways Golf Course and Country Club, a public golf course, pursuant to a lease agreement with Putts & Divots.

The Fairways Golf Course was constructed in the late 1960s. Originally, it consisted of seven separate parcels, known as Parcels A-1 through A-7. On May 30, 1985, the owner of the Fairways Golf Course conveyed it to Perch Hankin. Around that same time, Perch Hankin subdivided a .92-acre parcel out of Parcel A-5 and created a new parcel known as Parcel D. Parcel D included the area upon which the men's and

_____

[1] On August 28, 2014, Appellants moved to quash McGonigal's cross-appeal on grounds that her brief to this Court violated several appellate rules. Specifically, Appellants assert that McGonigal: 1) filed and served her brief in an untimely manner (Pa.R.A.P. 2188); 2) failed to comply with word limits (Pa.R.A.P. 2135); 3) impermissibly included argument within her statement of the case (Pa.R.A.P. 2117); and, 4) failed to properly develop issues raised on appeal (Pa.R.a.P. 2119). As these alleged violations have not hampered our review of McGonigal's claims, we deny Appellants' motion to quash.

women's tee boxes for the fifth hole of the Fairways Golf Course were located.

By deed dated June 28, 1985, Perch Hankin conveyed Parcel D to a builder, Sal Paone, Inc. (Paone). Although there was no written easement agreement, the Fairways Golf Course continued to use the rear of Parcel D for the fifth hole tee boxes. Paone improved Parcel D by constructing a single family home on the property. Thereafter, on August 29, 1989, Paone conveyed the improved property to Joseph Sink and Carolyn M. Sink (Sinks). The Fairways Golf Course continued to use the rear of Parcel D for the fifth hole tee boxes during the Sinks' ownership of the property.

In May 1990, Perch Hankin sold the Fairways Golf Course property to his son, Mark Hankin. Again, the Fairways Golf Course continued to use the rear of Parcel D for tee boxes. A few years later, in 1993, Mark Hankin sold the golf course to Putts & Divots. Thereafter, Putts & Divots continued to use the rear of Parcel D for the fifth hole tee boxes.

McGonigal purchased and moved into the home on Parcel D in August 2005. Putts & Divots continued its use of the property. McGonigal began to complain about golf balls striking her house in the Spring of 2006. She took no immediate action, however, because Joseph Lightkep, one of the partners in Putts & Divots, told her that the golf course had a written right to use Parcel D for the tee boxes. Nevertheless, in November 2010, McGonigal erected a temporary fence across the tee boxes that precluded golfers or anyone else from accessing the tee boxes or cart paths on the property.

In response, Appellants, on May 5, 2011, filed a declaratory judgment complaint in the Court of Common Pleas of Bucks County and moved for a preliminary injunction to remove the fence. Appellants' complaint and motion for preliminary injunction asserted prescriptive easement rights to use the tee boxes. On June 8, 2011, the trial court issued a preliminary injunction (amended as of June 13, 2011) directing McGonigal to remove the fence. McGonigal complied with the court's order and Appellants resumed their use of the tee boxes. McGonigal appealed the order granting Appellants' request for injunctive relief and this Court ultimately affirmed in an unpublished memorandum issued on October 1, 2012. *Putts & Divots v. McGonigal*, 62 A.3d 446 (Pa. Super. 2012) (unpublished memorandum).

On June 27, 2011, McGonogal filed an answer, new matter, and counterclaims in response to Appellants' complaint. McGonigal requested a jury trial (to the extent available) and alleged the following counterclaims against Appellants: 1) trespass; 2) conversion; 3) unjust enrichment; 4) waste; 5) nuisance; 6) ejectment; 7) quiet title; 8) declaratory relief; 9) violation of easement (in the alternative); and, 10) fraudulent misrepresentation.

A jury trial commenced on October 15, 2012 and concluded on October 24, 2012. The jury returned a verdict in favor of Putts & Divots on its claim seeking a declaration that it established a prescriptive easement to

use the rear of Parcel D for the tee boxes.[2]  The jury found in favor of McGonigal on her counterclaims of trespass and unjust enrichment, awarding $5,000.00 in damages on the trespass claim and $100,000.00 on the counterclaim for unjust enrichment.  The jury rejected the remainder of McGonigal's claims that fell within its providence to decide, including violation of easement, nuisance, and fraudulent misrepresentation.[3]

Both sides filed post-trial motions after the jury returned its verdict. Appellants filed a post-trial motion seeking entry of a JNOV as to McGonigal's unjust enrichment claim.  McGonigal raised numerous post-trial claims, including, among other things, a motion for JNOV on Appellants' prescriptive easement claim.  In the alternative, McGonigal requested a new trial on all claims against all parties (except her unjust enrichment and trespass counterclaims) based upon various errors that allegedly occurred at trial.

On November 13, 2013, the trial court granted a new trial on all claims against all parties and denied all other post-trial motions.  In denying Appellants' motion for JNOV on McGonigal's unjust enrichment claim, the trial court identified a fundamental conflict in the jury's award of both a

_____

[2] Under a stipulation reached by the parties, Putts & Divots, as the owner of the dominant tenement, was the appropriate plaintiff on that cause of action.

[3] McGonigal withdrew her claims for declaratory judgment, waste, quiet title, and conversion.  Additionally, the parties agreed that the trial court would decide McGonigal's ejectment counterclaim, if necessary.

prescriptive easement (in favor of Appellants) and a recovery for unjust enrichment (in favor of McGonigal). Moreover, in support of its decision to order a new trial on all claims, the court cited the inconsistency of the jury's verdict together with its opinion that confusion over the complex claims in the case contributed to the factfinder's determinations.

Both Appellants and McGonigal timely appealed from the trial court's November 13, 2013 order.[4] After the parties filed concise statements of errors complained of on appeal, the trial court issued its Pa.R.A.P. 1925(b) opinion on February 3, 2014.

Appellants' brief raises the following questions for our consideration:

Did the [t]rial [c]ourt abuse its discretion when it ordered a new trial of all claims on the grounds that the verdicts on Putts & Divots' [p]rescriptive [e]asement claim and McGonigal's [u]njust [e]nrichment counterclaim were inherently inconsistent and/or because the jury was confused, where Putts & Divots used the property in the absence of any vested easements rights for ten months after McGonigal purchase[d] it?

Did the [t]rial [c]ourt abuse its discretion when it denied Appellants' [p]ost-[t]rial [m]otion for JNOV as to McGonigal's [u]njust [e]nrichment counterclaim where McGonigal did not introduce any evidence, let alone sufficient value of the competent evidence to sustain a verdict, as to the reasonable benefit she alleges was conferred upon Appellants?

Did the [t]rial [c]ourt abuse its discretion when it denied Appellants' [p]ost-[t]rial [m]otion for JNOV where McGonigal's counterclaim for [u]njust [e]nrichment is barred by the applicable four-year statute of limitations?

---

[4] This Court subsequently consolidated the appeals.

Appellants' Brief at 5.[5]

McGonigal's brief raises the following cross-appeal claim:

Whether the [trial c]ourt committed an abuse of discretion when it denied McGonigal's [m]otion for JNOV on [Putts & Divots'] claim for prescriptive easement?

McGonigal's Brief at 7.

Appellants' first claim challenges the trial court's November 13, 2013 order to the extent it granted a new trial. Our Supreme Court has elaborated at some length on the standard and scope of review that applies when a litigant challenges an order granting a new trial.

Trial courts have broad discretion to grant or deny a new trial. The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether

---

[5] We have reordered Appellants' claims to facilitate a more logical discussion of the issues.

one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

At this first stage, the appellate court must apply the correct scope of review, based on the rationale given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. There is a narrow scope of review: where the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard.

[Conversely,] [i]f the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,' the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial.

Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court.

The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error. If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new

- 8 -

trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred.

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

When determining whether the trial court abused its discretion, the appellate court must confine itself to the scope of review, as set forth in our preceding discussion. If the trial court has provided specific reasons for its ruling on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, applying a narrow scope of review, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new trial on any other basis. Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the "interests of justice," an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record.

*Harman, ex rel. Harman v. Borah*, 756 A.2d 1116-1124 (Pa. 2000)

(internal citations and certain internal quotations omitted).

In this case, the trial court identified a single rationale for its decision to order a new trial. Specifically, the trial court "found that there was such a clear error of law that [the result was tainted]. There was a clear and basic

and fundamental conflict in the award of both a prescriptive easement and unjust enrichment that a new trial had to be granted. Those two awards could not legitimately co-exist under the undisputed aspects of the trial." Trial Court Opinion, 2/3/14, at 12. Because the trial court expressed only one reason for ordering a new trial, we confine the scope of our review to the designated basis for the court's ruling.

Appellants do not dispute that the predominant and competing legal themes in this case (Putts & Divots' prescriptive easement and McGonigal's claim for unjust enrichment) are, in large part, doctrinally incompatible. Put differently, Appellants nowhere challenge the underlying premise of the trial court's conclusion, *i.e.* that the holder of a prescriptive easement cannot be held liable under a theory of unjust enrichment after the easement vested. Instead, Appellants argue that the trial court abused its discretion in granting a new trial because the jury's verdict conceivably can be reconciled with the evidence introduced at trial:

> Here, the trial court correctly noted that "it was just and equitable for Putts & Divots to benefit from the hostile use of the tee box so long as it had the prescriptive right to do so. . . ." [Trial Court Opinion, 2/3/14, at 13]. In other words, there was nothing unlawful or unjust about Putts & Divots' use of Parcel D after it had established its prescriptive easement rights to use the property. The fatal flaw of the trial court's finding that the jury made a mistake was its failure to consider that, as a matter of law, it takes 21 years for such rights to vest, and unless and until such rights have vested, there is nothing to preclude a determination or finding that use of another's property is unjust or inequitable.

In this case, the clock for prescriptive easement started ticking on or about June 28, 1985, the first day when the servient tenement (Parcel D) and the dominant tenement [(the golf course)] became owned by different entities (Sal Paone and Perch Hankin, respectively). The overwhelming evidence at trial was that, thereafter, the [golf course] continuously used and maintained the tee boxes in the same location through to the date of trial. As a result, there was more than ample evidence in the record to support that Putts & Divots' had established prescriptive easement rights to continue to use the rear of Parcel D for the tee boxes as of June 28, 2006, 21 years later. Until that time, however, Putts & Divots did not, as a matter of law, have any prescriptive easement rights. Thus, there is nothing prohibiting a concurrent finding by the jury that any use of Parcel D from August 1, 2005 – when [McGonigal] purchased Parcel D and moved into her new residence – until June 28, 2006, was unjust, inequitable, or otherwise unlawful. Indeed, given the facts of this case and the applicable law on which the jury was charged, these finding are perfectly harmonious. To conclude otherwise, would require a complete disregard for the record and the applicable law.

Appellants' Brief at 36-37 (footnotes, emphasis and record citations omitted).

Appellants' contention merits no relief from the order directing a new trial. Applying **Harman**, we find first that the trial court committed legal error in failing to properly instruct the jury, particularly as to the interplay between the doctrines of prescriptive easement and unjust enrichment. We agree with the trial court that this error caused confusion amongst the jurors and tainted the verdict that they returned. Consequently, for the reasons that follow, we discern no abuse of discretion in the trial court November 13, 2013 order.

It is well settled that an inadequate jury instruction may amount to reversible error if it has a tendency to mislead the jury or if it

- 11 -

> omits material, which is basic and fundamental. Although a trial court need not use the specific language requested by a party, its words must sufficiently and fully convey the rules of law applicable to the case.
>
> Further, an error in a jury instruction is sufficient grounds for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue.

***Machado v. Kunkel***, 804 A.2d 1238, 1244 (Pa. Super. 2002) (internal citations and quotations omitted), *appeal denied*, 819 A.2d 547 (Pa. 2003).

Although the trial court instructed the jury as to the legal elements for a prescriptive easement and a claim of unjust enrichment, the court neglected to instruct the jury as to the interplay between these doctrines, which constituted a basic and fundamental omission. To illustrate, the court did not instruct the jury that McGonigal could only assert an unjust enrichment claim prior to the date when Putts & Divots acquired its prescriptive easement rights. Thus, the court never explained to the jury that if Putts & Divots acquired a restrictive easement, the theory of unjust enrichment was no longer available to McGonigal as an avenue of recovery. By omitting such instructions, the trial court failed to fully inform the jury of the rules applicable in this case.

Having determined that the trial court erred in formulating its instructions to the jury, we now consider whether it abused its discretion in ordering a new trial. Appellants argue that a new trial was inappropriate since it is possible to reconcile the jury's verdict with the applicable law and the evidence introduced at trial. However, the jury completed a lengthy

questionnaire setting forth its findings and nothing in that form enabled the court or the parties to verify the period during which Putts & Divots acquired its prescriptive rights or to identify the timespan when Appellants were unjustly enriched through their use of Parcel D. Without such confirmatory information, Appellants' claim that the verdict can conceivably be reconciled with the evidence introduced at trial is unsupported. Instead, we conclude that the trial court's determination that juror confusion led the factfinder to reach a compromise verdict appears far more plausible given the complex claims presented in this case. Under the applicable standard of review, we must affirm where we find any basis in the record to support the trial court's new trial order. Thus, we conclude that Appellants' first claim merits no relief.

Our decision to affirm the trial court's order granting a new trial as to all claims obviates the need to consider the parties' remaining claims, in which Appellants assert that they were entitled to JNOV on McGonigal's unjust enrichment claim and McGonigal claims she was entitled to JNOV on Putts & Divots' prescriptive easement claim. Hence, we decline to address these additional claims and remand this case for further proceedings.

Order affirmed. Motion to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/23/2015</u>